[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 27, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14220
Non-Argument Calendar

_____

D. C. Docket No. 06-00255-CR-2-CLS-PWG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDDIE CUNNINGHAM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(March 27, 2008)**

Before BIRCH, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Eddie Cunningham appeals his conviction and 180-month sentence for possession of firearms by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). On appeal, Cunningham argues that the evidence presented at trial was not sufficient to establish that he had constructive possession, that is, dominion and control, over the shotguns found inside his home. Cunningham asserts that the evidence shows that only his wife had dominion and control over the shotguns. Cunningham further contends that his mere presence in the home, or his knowledge of the location of the shotguns, is insufficient to establish constructive possession. Second, Cunningham argues that the district court failed to sufficiently instruct the jury on the law of possession, specifically, the issue of "dominion and control." Cunningham contends that, as a result, the jury did not understand the issues involved.

Last, Cunningham argues that his 180-month sentence, imposed pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4(a), constitutes cruel and unusual punishment because it is greatly disproportionate to the offense that was committed. Cunningham asserts that this is particularly true because his qualifying prior felony convictions occurred approximately 20 years before the instant offense. Cunningham also asserts that the ACCA-enhanced sentence does not allow the district court to adequately

consider significant factors such as his age at the time of the prior offenses, his rehabilitation since those convictions, and the circumstances involved in the instant offense.

For the reasons set forth more fully below, we affirm Cunningham's conviction and sentence.

I.

We review de novo "whether there is sufficient evidence to support the jury's verdict." United States v. Ortiz, 318 F.3d 1030, 1036 (11th Cir. 2003). We will affirm the jury's verdict "if a reasonable trier of fact could conclude that the evidence establishes guilt beyond a reasonable doubt." Id. (quotation omitted). On review, the evidence is viewed "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." Id. (quotation omitted).

"Under 18 U.S.C. § 922(g)(1), it is unlawful for a felon to possess a firearm. Section 922(g)(1) requires the government to prove 'three distinct elements:' (1) that [the defendant] was a convicted felon; (2) that [the defendant] knew he was in possession of a firearm; and (3) that the firearm affected or was in interstate commerce." United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004). "Possession can be shown by circumstantial as well as direct evidence . . . [and] . . .

can be either actual or constructive[.]" United States v. Crawford, 906 F.2d 1531, 1535 (11th Cir. 1990). "A defendant has constructive possession if he exercises ownership, dominion, or control over the firearm. A defendant also has constructive possession if he has the power and intention to exercise dominion or control. The defendant may exercise that dominion and control either directly or through others." United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004) (citations omitted).

The record establishes that Cunningham stipulated that he was a convicted felon. As to Cunningham's knowledge that he was in possession of a firearm, the record indicates that Cunningham's wife, Dannye, purchased two Mossberg 12-gauge shotguns as a birthday present for Cunningham. Dannye took the shotguns to her father's house, and after his death, to her mother's house, where they remained until October 2004. Cunningham and Dannye separated in October 2004 and Cunningham moved in with Elliot Jackson. After Cunningham moved out, Dannye brought the shotguns back to the home they had shared.

On February 7, 2005, Cunningham returned to the family home to speak with Dannye. Dannye and Cunningham engaged in a heated argument and Cunningham's step-daughter called the police to resolve the dispute. Although the evidence indicates that Cunningham was not living with his wife at that time, there

4

is no dispute that two shotguns were found inside the house that night. One of the shotguns was found in a basement bedroom. The record indicates that Cunningham was in the basement when the officers entered the house, and that he initially refused to cooperate with the officers' instructions to exit the basement, instead "taunting" the officers by remaining partially hidden and only revealing one hand at a time. Later, Cunningham admitted that there was a shotgun in the basement bedroom, and physically pointed out the location of the gun to one of the officers. Earlier, Dannye advised the officers that there was a gun underneath the bed in the upstairs master bedroom. While leaving the house, Cunningham confirmed that his wife had bought the shotguns for him as a birthday present and noted that he could not purchase guns because he was a convicted felon. Further, both shotguns were manufactured in Connecticut and, thus, had traveled in interstate commerce. Accordingly, these facts support a finding that Cunningham, a convicted felon, had constructive possession of the shotguns found in his home on February 7, 2005. See Wright, 392 F.3d at 1273; Gunn, 369 F.3d at 1235. Therefore, viewing the evidence in the light most favorable to the government, we conclude that there was sufficient evidence to convict and affirm as to this issue.

## II.

Where the defendant fails to object to a jury instruction before the district

court, our review of that instruction is for plain error. Wright, 392 F.3d at 1277.

Under plain error review, there must be: "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three of those conditions are met, the court may exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. LeCroy, 441 F.3d 914, 930 (11th Cir. 2006); Wright, 392 F.3d at 1277.

Here, the district court's jury instruction mirrored the pattern jury instruction from this Circuit regarding the law of possession. The court's instruction was proper because it informed the jury members that in order to find that Cunningham possessed the subject firearm(s), they had to find that he either had direct physical control over it or had the power and the intent to exert control over it. Additionally, the court's instruction reflected an accurate statement of the law. See Gunn, 369 F.3d at 1235; Crawford, 906 F.2d at 1535. Accordingly, the district court did not plainly err in instructing the jury on the law of possession, and we affirm as to this issue.

### III.

We have declined to review a claim that a sentence constituted cruel and unusual punishment when the argument was not raised in the district court. See United States v. Sanchez, 138 F.3d 1410, 1417 (11th Cir. 1998) (refusing to

6

consider Eighth Amendment argument, where defendant's sentence was enhanced through a "career offender provision," because the defendant did not raise it in the district court). However, we have reviewed a constitutional challenge to a sentence not raised in the district court for plain error. United States v. Swatzie, 228 F.3d 1278, 1281 (11th Cir. 2000). To correct plain error, we first must find (1) error, (2) that is plain, and (3) that affects substantial rights. "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

The ACCA provides that any person convicted of an offense under 18 U.S.C. § 922(g) who has 3 previous convictions for a violent felony or a serious drug offense, is subject to a 15-year mandatory minimum sentence. 18 U.S.C. § 924(e)(1). A "violent felony" is defined as an offense punishable by a term exceeding one year that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) is, inter alia, burglary or "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The record indisputably established that Cunningham was convicted of five separate instances of armed robbery, in violation of Ala. Code § 13A-8-41, an offense punishable under Alabama law by

20 years to life imprisonment pursuant to Ala. Code § 13A-5-6(a)(1), (5).

Accordingly, the district court properly found that Cunningham was subject to the increased sentence under the ACCA.

"In non-capital cases, the Eighth Amendment encompasses, at most, only a narrow proportionality principle." United States v. Brant, 62 F.3d 367, 368 (11th Cir. 1995) (citing Harmelin v. Michigan, 501 U.S. 957, 985-994, 111 S.Ct. 2680, 2696-2701, 115 L.Ed.2d 836 (1991)). We must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed, and only if we so find must we then consider sentences imposed on others in the jurisdiction and for commission of the same crime in other jurisdictions. United States v. Reynolds, 215 F.3d 1210, 1214 (11th Cir. 2000).

In Reynolds, the defendant pled guilty to violating 18 U.S.C. §§ 922(g)(1) and 924(e), and was sentenced under the ACCA to 180 months' imprisonment. Id. at 1212-13. Reynolds's triggering offenses included felony convictions for delivery of cocaine, burglary, and aggravated battery. Id. at 1212. Although Reynolds argued that his sentence was disproportionate because his possession of a firearm was for an innocent reason, specifically, to prevent a teenager's access to the firearm, we reasoned that "[s]ections 922(g) and 924(e)(1) . . . do not focus on the motive or purpose of the current possession of firearms, but rather on the fact

8

that a person with three or more violent felony or serious drug convictions currently possesses a firearm." Id. at 1214 (citation omitted). We held that the 15-year sentence was not grossly disproportionate to the § 922(g) offense, and that the ACCA did not impose cruel and unusual punishment. Id.

Here, Cunningham was convicted under the same statutes and was sentenced to the same term of imprisonment as Reynolds. In addition, Cunningham's qualifying prior convictions, which included five state convictions for armed robbery, arguably were as serious, if not more so, than the qualifying offenses in Reynolds. Accordingly, we hold that Cunningham's sentence is not grossly disproportionate to his offense of conviction, and therefore, does not violate the Eighth Amendment. Moreover, to the extent that Cunningham argues that the application of the ACCA based on 20-year-old prior convictions results in an unconstitutionally disproportionate sentence, he misinterprets the applicable analysis. The test for an Eighth Amendment violation is whether the sentence was grossly disproportionate to the offense for which the sentence was imposed. Reynolds, 215 F.3d at 1214. Further, to the extent that Cunningham argues that the application of the ACCA does not allow the court to consider mitigating circumstances such as his age at the time of the prior offenses, his subsequent rehabilitation, and the facts surrounding the instant offense, the district court

9

expressly acknowledged and considered these circumstances in its analysis of the § 3553(a) sentencing factors. Accordingly, Cunningham has failed to show plain error.

In light of the foregoing, Cunningham's conviction and sentence are

**AFFIRMED.**